(C. D. 513)

MAURICE KRENGEL v. UNITED STATES

United States Customs Court, Third Division

(Decided June 6, 1941.)

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph F. Donohue* and *James F. Donnelly*, special attorneys), for the defendant.

Before CLINE and KEEFE, Judges

KEEFE, Judge: In these suits certain merchandise invoiced as cleaved diamonds was assessed for duty at 30 per centum ad valorem under paragraph 214, Tariff Act of 1930. The plaintiff claims that the merchandise consists of diamonds, rough or uncut, and is entitled to free entry under paragraph 1668.

At the trial two witnesses testified on behalf of the plaintiff. The importer testified that he produces merchandise such as imported herein; that it consists of raw material in diamonds and is not changed from the natural state; that after having been polished the diamonds

herein are only suitable for industrial purposes and never for gems; that the imported merchandise consists of diamonds cleaved from larger diamonds; and that that is the only change from their natural state.

The importer further testified that there are diamonds found in their natural state in the same condition as the diamonds here in question; that such diamonds have been cleaved naturally and the price of the naturally cleaved diamonds and those that have been cleaved from larger stones is approximately the same, although at times the naturally cleaved diamonds are more expensive.

Harold De Sola Mendes, for 30 years dealing in industrial diamonds and manufacturing diamond tools, testified for the importer that for 30 years he had bought and sold rough diamonds and also cleaved points; that in cleaving diamonds the form, shape, or size only is changed and the cleaved forms still remain natural diamonds; that a cleaved diamond is one that has been split, either intentionally or unintentionally, and such diamonds are used principally in making optical lens goods and he makes from 75 to 90 per centum of drills for that purpose; and that the cleaving of diamonds does not advance them in value or condition toward the ultimate object for which they are used.

The witness further testified that rough diamonds in their natural condition before cleaving are used in the manufacture of optical drills in the same manner as cleaved points and there is no benefit in using cleaved points rather than the natural rough diamonds; that a rough diamond is ground from a cylinder shape and then the point is ground and faceted. The witness admitted that he does not do any cleaving of diamonds but acquires diamond points already cleaved because there is more labor on the rough diamond before it can be used, and that if he had a large brown diamond and wanted it cleaved he would need to have it done for him, although in order to obtain a diamond in a long-pointed shape it could be so processed by grinding or polishing and not necessarily by cleaving.

Witness further testified that he had examined an importation of these diamonds at the request of Mr. Kean, the examiner of diamonds at New York, and made a written report thereon for the Government; that the merchandise he examined consisted of brown cleaved points in sizes of one-half carats to three-quarter carats, of not any particular size in the lot; that they consisted of rough industrial diamonds that had been cleaved and in his opinion were rough diamonds; that he had also observed in the lot rough diamonds which were naturally cleaved, that is to say, they were found in nature in such condition.

Upon behalf of the Government the examiner of diamonds at New York and two dealers who had examined a shipment of these diamonds were called to the stand.

Mr. Kean testified that he had examined the diamonds in question and found them to consist of industrial diamonds which had been broken into parts from larger diamonds by cleaving or splitting; that the diamonds were not rough or natural in appearance which shows that they had been cleaved; that a cleaved stone presents a very smooth side which does not appear in a rough natural diamond; that the rough, industrial diamonds, naturally cleaved, are distinguishable from the cleaved diamonds because they have a long, narrow appearance and a rough point; that the shipment examined by the previous witness contained some naturally cleaved diamonds but that part of the shipment was returned by him as free of duty; that such naturally cleaved diamonds are suitable for the same purpose, after being further processed to the satisfaction of the toolmaker as diamonds that have been brought to that condition by a process of manufacture abroad wherein the diamonds, by being split down through the grain so as to leave a very smooth side, the remainder of the stones being in a rough state; that a cleaved diamond is not any nearer being fit for ultimate use than a rough diamond of the same size, but in his opinion these particular diamonds were split or cleaved to size because the shipments contain sizes of half carats, three-quarter carats and carats; and that from his observation and examination he considered the cleaved diamonds in question to have originally been natural points because of their shape and size and were further processed by cleaving.

The witness further testified that at times the process of cleaving improves the value of the stone or advances its condition according to the circumstances surrounding each particular shipment; and that the stones in question were improved in condition by cleaving as they are no longer in a natural state, although in value there is not much difference between the natural and the cleaved points.

Dorus Van Itallie testified for the Government that he was an importer and dealer in industrial diamonds and diamond-pointed tools for 22 years and his daily occupation consists of the appraisement of such stones; that he had examined a shipment of these stones at the request of the Government examiner and from his observation he considered that the stones had been broken down for subsequent manufacture into lens drills; that they were not a waste product but were advanced in value by cleaving or sawing and generally processed up to a certain definite shape, having been derived from larger, irregular pieces of diamonds and were advanced in condition beyond the rough state; that in his opinion the stones were sawed or cleaved from a piece of diamond with the definite purpose of obtaining these pieces in such condition that they were much nearer a lens drill than they were in the original piece; and that the diamonds he observed were not fit to be used as lens drills but they were well along the way

toward that use, having the length and the width, and simply required a polished point and a mechanically rounding-up to be ready for use.

The witness further testified that slivers and small pieces of diamonds broken off a stone in processes designed to obtain the stone rather than the pieces would never be obtained in the shapes contained in the shipments he examined because these pieces were long and shaped; that a rough diamond could be used for making several lens drills by first sawing or cleaving to obtain long, square pieces and then to make a drill such pieces would only have to be rounded up and a point made; that when diamonds of the type in question are cleaved into such pieces about 40 per centum of usable material is obtained and the other 60 per centum would be unsuitable for the purpose of drills; that the diamonds in the packages he examined consisted of the usable material only; and that naturally drillers in this country would pay an advanced price for nearly finished points rather than take a chance of buying stones from which they would be unable to determine how many points could be obtained therefrom.

Charles F. Haake testified for the Government that he was a diamond toolmaker for 38 years; that he purchases industrial diamonds and appraises their value as part of his duties; that he had been called by the New York diamond examiner to inspect a shipment of these stones; that from his observation the merchandise consisted of a lot of cleaved and sawed points, brown in color and produced from brown bort diamonds; that through cleaving and sawing the stones were advanced beyond the rough condition as there was only a little labor necessary to be performed upon them to fit them for lens drills; and that to adapt some of them for their ultimate use it would only be necessary to have four facets run on them and set them.

The evidence further established that the process of cleaving diamonds may be performed only by experts in that line as the diamonds are required to be cleaved along the natural lines of cleavage which may be recognized only by experts and that the process does not consist of merely breaking the stones into smaller units.

Counsel for the plaintiff contends that the cleaved diamonds in question are not advanced in value or condition toward their ultimate objective and are no nearer fitted for their ultimate use than a rough diamond of the same size consisting of a piece broken from a larger stone rather than being cleaved therefrom; and that the labor to be performed upon cleaved diamonds is just as extensive as upon the naturally cleaved diamonds of the same size.

It is the contention of counsel for the Government, on the other hand, that the paragraph under which plaintiff claims free entry expressly excludes diamonds advanced in condition or value from their natural state by cleaving, and that the cleaving performed upon the diamonds in question advanced them in condition or value,

having resulted in a diamond of a definite shape fitting it for a definite purpose.

The paragraphs of the Tariff Act of 1930 in controversy provide as follows:

PAR. 214. Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

PAR. 1668. Diamonds and other precious stones, rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, whether in their natural form or broken   *   *   *.

The question for consideration herein is whether or not the cleaving or splitting of industrial diamonds has advanced them in condition or value from their natural state.

The collector in his classification of the merchandise as a mineral substance rather than a rough or uncut diamond has concluded that the cleaving removed them from the provisions of paragraph 1668. The evidence produced by the importer in our opinion fails to establish that the cleaving of the stones failed to advance the same in value or condition, whereas the evidence produced by the Government tends to establish that the condition of the cleaved stones is improved by a process requiring the skill and experience of experts to such an extent that they were well along the way toward their ultimate use as drills for lenses and that such product nearly finished for use would be more desirable than stones not so processed.   The splitting of the stones so as to make them suitable for use in the manufacture of drills is one of the necessary processes in the manufacture of such articles with producers who use cleaved stones for such purposes. True, there is nothing definite in the testimony adduced to absolutely establish that the cleaved stones are actually advanced in value or condition beyond the value or condition of naturally cleaved stones. Neither is there anything to establish that the stones in question were not brought to the same value or condition by the labor performed thereon or that, by cleaving, these particular diamonds were of less value or in a worse condition than the rough diamonds from which they were cleaved.   From a consideration of the evidence as a whole we are of the opinion that the cleaved diamonds in question have been advanced in condition or value from their natural state by cleaving, and therefore such diamonds do not fall within the provision for diamonds uncut.

We therefore hold that the presumption of correctness of the collector's classification has not been overcome and judgment will accordingly be rendered in favor of the Government.